UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RODNEY MORGAN,<br>    Plaintiff,<br><br>v.<br><br>LIUNA STAFF AND AFFILIATES<br>PENSION FUND,<br>    Defendant. | )<br>)<br>)<br>)    No. 3:10-CV-51<br>)    (Phillips)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

Plaintiff filed this action seeking review of the defendant's denial of his application for a disability pension pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). This matter is before the court for consideration of the cross-motions for summary judgment filed by the plaintiff and the defendant. Plaintiff avers that the defendant's decision to deny him disability pension benefits was arbitrary, capricious, an abuse of discretion, and contrary to the law and the facts. Defendant, on the other hand, avers that its decision to deny Plaintiff's disability pension application was the reasonable result of a deliberate, principled reasoning process and was not arbitrary and capricious.

**I. Standard of Review**

The parties agree that the appropriate standard of review is the arbitrary and capricious standard, and not the *de novo* standard, because the Pension Fund's governing

documents grant the Fund discretionary authority to determine benefit eligibility and interpret the Fund's rules and regulations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *Conknight v. Frommert*, 130 S.Ct. 1640 (2010); *Helfman v. GE Group Life. Ass. Co.,* 573 F.3d 383 (6th Cir. 2009).

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious. *Killian v. Healthsource Provident Admn, Inc.,* 152 F.3d 514, 520 (6th Cir. 1998). Where, as here, the plan administrator is given the discretionary authority to determine the eligibility for benefits or to construe the plan terms, the court reviews the administrator's decision to deny benefits using the highly deferential arbitrary and capricious standard of review. Under this standard, the court will uphold the administrator's decision, "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence. The administrator's decision must be rational in light of the plan's provisions." H*elfman*, 573 F.3d at 392.

The court must accept a plan administrator's rational interpretation of the plan, "even in the face of an equally rational interpretation offered by the participants." *Gismondi v. United Technologies Corp.,* 408 F.3d 295, 298 (6th Cir. 2005), *quoting Morgan v. SKF USA Inc.,* 385 F.3d 989, 992 (6th Cir. 2004). A plan administrator's decision "will not be disturbed if reasonable." *Conkright*, 130 S.Ct. at 1649. The court's review is limited to

the record before the Appeals Committee at the time it made its decision. *Wilkins v. Baptist Healthcare Sys. Inc.,* 150 F.3d 609, 616 (6th Cir. 1998).

**II. Statement of Facts**

The Pension Fund is a pooled trust fund established and maintained for the exclusive purpose of providing a defined benefit retirement income for officers and staff employees of the Laborers' International Union of North America (LIUNA) and of local unions, district councils and other labor organizations affiliated with LIUNA. All benefits, including disability pensions, are paid from the Fund's assets. Article II, Section 2.08 of the Pension Fund's Rules & Regulations state that "a participant shall be entitled to retire on a disability pension if he . . . becomes totally and permanently disabled . . . at a time when he is actively employed in covered service . . . ." Article II, Section 2.09 defines "total and permanent disability" as follows:

> A participant shall be considered totally and permanently disabled hereunder only if the Trustees, in their sole judgment and based on medical evidence, find that he has been totally disabled and thereby prevented from continuing his employment with a Contributing Employer, that he is unable to engage in, or secure, any other employment or gainful pursuit because of his disability, and that his disability is expected to be permanent.

AR at 232-33.

Morgan was employed full-time as the Business Manager of LIUNA Local Union No. 818 from sometime in 2004 through August 3, 2007. From January 1, 2000 until he became Business Manager in 2004, he was employed full-time by Local Union 818 as

3

Assistant Business Manager. Before 1999, he was employed by various building and construction industry employers as a construction laborer. On August 29, 2006, Morgan pulled his left shoulder while attempting to prevent a heavy co-worker from falling.

On March 26, 2008, Morgan applied to defendant LIUNA Staff & Affiliates Pension Fund for a total and permanent disability pension for the rest of his lifetime. In his application, he described the nature of his disability as "loss of use of [left] arm," and that he became disabled on February 19, 2008. In support of his application he submitted medical records from his treating physicians, Dr. Michael MacKay and Dr. Michael Craig.

Dr. Mackay, Morgan's surgeon who treated and examined him repeatedly through 2007, gave a final medical opinion in February 2008 as follows:

> I do not think that another surgery is really going to offer us much chance of success of relieving his pain and would rate him at maximal medical improvement today with permanent restrictions of no lifting or gripping over 5 lb with his left upper extremity and no overhead use. He can only do light duty work about waist level. Since he will likely be on pain medication permanently, he should not use heavy machinery nor should he do any commercial driving.

AR at 63.

In his final, January 2008 report, Dr. Craig deferred to Dr. MacKay with regard to whether Morgan would have any permanent work restrictions:

> I wrote for continued work restrictions with lifting limited to 2 pounds and waist level activities with the left upper extremity. I would defer any permanent work restrictions as well as impairment rating to Dr. MacKay.

4

AR at 69.

Morgan also submitted a December 11, 2008 letter from his primary care physician, Dr. Jennifer Best, which stated:

> At this point it is the opinion of this office patient cannot pursue manual labor due to his left shoulder issues. He requires chronic medications in order to control other aforementioned medical problems.

AR at 125. Dr. Best's records noted that Morgan also suffered from other medical problems in addition to his shoulder including sleep apnea, diabetes, reflux, hypertension, dyslipidemia, restless leg disorder, hypogonadism and iron deficiency.

Morgan filed a workers compensation claim regarding his shoulder injury. The claim was settled and Morgan entered into a Workers Compensation Settlement Agreement which states:

> (a) Morgan retains a permanent anatomical impairment ... to the body of twenty-four percent (24%), based on the American Medical Association Guide to the Evaluation of Permanent Impairment, Fifth Edition.
>
> (b) The Parties agree that the injury has resulted in an overall industrial disability rating of sixty-nine point six four eight percent (69.648%) to the body taking into account Employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in [Mr. Morgan's] disabled condition.
>
> (c) Under Tennessee workers compensation law, Morgan is entitled to benefits for permanent partial disability of $682.00 per week for 278.59 weeks representing a permanent partial disability of 69.648% to the body as a whole, in the total amount of ($190,000).

5

AR 84-85.

The Fund's administrative office arranged with Genex for an independent physician to examine Morgan and assess whether he was totally and permanently disabled within the meaning of the Pension Fund's Rules & Regulations. Copies of Morgan's medical records were sent to Genex and provided to Dr. Edward Kahn along with the Pension Fund's definition of "total and permanent disability." Dr. Kahn examined Morgan on June 17, 2008 and submitted a written report of examination. The report recounts Morgan's history of left shoulder problems, which began on August 29, 2006 when he pulled his left shoulder while attempting to prevent a heavy co-worker from falling. Thereafter, he had multiple surgical procedures and other treatments on the shoulder by Dr. MacKay in an attempt to restore full motion and relieve pain. Dr. Kahn's "impression" of Morgan's medical status is "painful left arm." He stated his opinion as follows:

> It is my opinion that Mr. Morgan's injury has left him permanently disabled in regards to a career in construction or in any other heavy manual labor. However, in this right-hand dominant man, according to the definitions provided to me by the Genex Corporation, he is clearly not totally disabled from any occupation for remuneration or profit. I do believe that the injury to his left shoulder is going to be permanent and continuous for the remainder of Mr. Morgan's life.

AR at 73. Based on Dr. Kahn's opinion that Morgan's condition did not meet the definition of "total and permanent disability" and that his doctors' reports did not indicate that he was "totally and permanently disabled," the Fund Administrator denied Morgan's application for a disability pension.

Morgan appealed the Fund Administrator's decision to the Trustees and submitted additional information regarding his application and appeal. Among the documentation provided was a copy of Morgan's Workers Compensation Settlement Agreement through the Tennessee Department of Labor; an October 13, 2008 report by Julian Nadolsky, Ed.D. concerning his vocational evaluation of Morgan; information about the medications being taken by Morgan; and a copy of Morgan's Social Security disability application.

On October 19, 2008, Morgan completed an application for Social Security disability benefits. In answering the work history questionnaire, Morgan stated that his work duties included meeting with contractors, walking down job sites, answering phone questions about work, assisting in construction activities, and coordinating daily activities for office employees. He described his activities as a Local Union Business Manager and Assistant Business Manager as non-manual and as involving technical knowledge or skills and writing tasks like completing reports. He also indicated that while Business Manager, he had responsibility for hiring, firing and supervision of the Union's employees. There is no indication in the record that Morgan was awarded Social Security disability benefits.

Dr. Julian Nadolsky completed a vocational evaluation and report relevant to Morgan's vocational disability. Dr. Nadolsky noted that Morgan is a 36-year old man who is unable to lift with his left hand and experiences recurrent numbness and tingling in the fingers. He also noted that Morgan encountered difficulty picking up and holding onto objects with his left hand. He noted that Morgan relies almost entirely on his right arm to

7

perform activities. Morgan was administered a Wide Range Achievement test which showed that he was reading at an eighth grade level and his arithmetic skills were at the fourth grade level. In addition, the Purdue Pegboard test was administered to determine plaintiff's ability to perform activities with his hands and arms. According to the test, Morgan had inferior dexterity with his right hand and was unable to perform the left hand test.

Dr. Nadolsky opined that Morgan would be unable to work in any of his prior jobs or engage in any medium, heavy, or very heavy occupations, or a job that is less physically demanding that requires the use of both upper extremities. Dr. Nadolsky further opined that Morgan does not have relevant transferable skills, and because of his inability to use his left upper extremity combined with his below average reading ability and below average arithmetic skills, Morgan would be unable to perform the duties of an entry level or unskilled sedentary or light occupation within the competitive labor market. Therefore, Dr. Nadolsky concluded that Morgan had been totally disabled since August 3, 2007 and it was unlikely that he would develop the capacity to participate in employment in the future.

The Board of Trustees' Appeals Committee considered all of the documentation and information submitted in support of Morgan's application. The Trustees also considered Dr. Kahn's independent medical examination report. After review, the Trustees denied Morgan's appeal, noting Dr. Kahn's opinion that Morgan was "clearly not totally disabled from any occupation for remuneration or profit." The Trustees also noted that none of Morgan's treating physicians indicated in their reports that he was "totally and

permanently disabled." To the contrary, the Trustees noted that their reports indicate that Morgan's disability is partial and does not prevent him from working. The Trustees discounted Dr. Nadolsky's opinion that Morgan was totally and permanently disabled because Dr. Nadolsky "is not a medical doctor and his opinion does not constitute medical evidence that the Pension Fund's Rules & Regulations require for determining total and permanently disability." The Trustees also found that Dr. Nadolsky's conclusions were not supported by the medical reports from Morgan's treating physicians. Further, the Trustees noted that Dr. Nadolsky assumed that Morgan only worked as a construction laborer, when in fact, he was a Local Union officer for the last seven years of his work history, performing non-manual activities involving technical knowledge or skills and writing tasks as well as supervision of employees. Finally, the Trustees noted that Morgan was able to continue working for the Union, despite his left shoulder problems, up until the time he was laid-off by the Union.

**III. Analysis**

Morgan argues that the record reflects that he has had four surgeries on his left shoulder, that his left upper extremity is almost useless, that he suffers from constant pain, that he suffers from other medical conditions, and that he does not have the education or wherewithal to compete in the open market for a job. Therefore, the Trustee's decision to deny him benefits in this case is arbitrary and capricious.

However, the medical evidence does not support Morgan's argument that he is totally and permanently disabled. Dr. Kahn found, after examining Morgan and reviewing

his medical records, that he "is clearly not totally disabled from any occupation for remuneration or profit. I do believe that the injury to his left shoulder is going to be permanent and continuous for the remainder of Mr. Morgan's life." None of the treating physicians' reports and opinions contradict the independent medical evaluation of Dr. Kahn. Further support that Morgan is not totally and permanently disabled is found in Morgan's Workers Compensation Settlement which states that his disability is partial, not total. The only opinion stating that Morgan is totally and permanently disabled was from Dr. Nadolsky, a non-medical vocational consultant. I agree with the Trustees' that Dr. Nadolsky's opinion was contradicted by the medical evidence and Morgan's actual work history as a full-time Union officer. Therefore, Dr. Nadolsky's report is entitled to little weight in the analysis of whether Morgan is disabled.

Morgan argues that consideration should be given to his pain and the effect of the medications he takes on a daily basis on his ability to work. However, all three of Morgan's doctors were aware of his complaints of pain over the course of nearly two years, but they did not opine that he is totally and permanently disabled.

The court finds that the Trustee's decision is not arbitrary and capricious. It reflects a thoughtful consideration of all the evidence presented and a reasoned, rational application of the relevant rules and regulations of the Pension Fund. The court further finds that the Trustee's conclusion is supported by substantial evidence. Accordingly, the Trustee's decision must be upheld. The Trustee's decision cannot be overturned by the court even if the court would have reached a different conclusion on the Administrative

Record. *Conkright*, 130 S.Ct at 1647 (the court has no power to act as a "substitute trustee"); *Gismondi,* 408 F.3d at 298 ("The Court must accept a Plan Administrator's rational interpretation of the plan, even in the face of an equally rational interpretation offered by the participants").

## IV. Conclusion

For the foregoing reasons, plaintiff Rodney Morgan's motion for summary judgment [Doc. 13] is **DENIED;** defendant LIUNA Staff & Affiliates Pension Funds' motion for summary [Doc. 14] is **GRANTED;** the Trustees' decision in this case denying plaintiff's application for disability pension benefits is **AFFIRMED;** and this case is **DISMISSED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge